Good morning, Your Honors, and may it please the Court, Deputy Attorney General George Morris, on behalf of defendant appellants. Please don't tell me this is easy. I think nothing about this case is easy, but I will say that the appeal is somewhat straightforward in the sense that the Court had ordered the defendants to create a treatment plan for the CDCR's inpatient psychiatric programs. These treatments plan required minimum standards to be established. Now these patients in the psychiatric inpatient program have the most severe mental illnesses and often pose the greatest safety and security risks. Indeed, patients who are in the next level down, which is the enhanced outpatient program that cannot tolerate 10 hours of structured treatment, are often referred to the inpatient program. Now defendants' plan did have minimum treatment frequencies for interdisciplinary treatment meetings for psychiatric contacts, primary clinician contacts, and out-of-cell activities. So I think, will you assert that the district court's reliance on prior orders adopting the special master's report is, I think you call it, misplaced? Why isn't the district court entitled to rely on the prior orders and special master's report in this rather lengthy remedial proceeding? Well, Your Honor, because there are no prior orders that either the court or plaintiffs have pointed to that address the situation. What we are dealing with here is treatment for these very specific psychiatric inpatients. And there have been no orders that have established a minimum number of hours that need to be  There are no orders that address whether or not a set number of hours would even improve care. So there's nothing in the court's prior orders that it can rely on to justify the injunction here. There's nothing in the court's prior orders that performs the required PLRA analysis, the need, narrowness, and intrusive analysis here. Instead, the court just imposed the 20-hour limit. You don't think there were any extensive factual findings in this case? Saying there's actually nothing in this case that's been litigated for three decades seems hyperbolic. Yes. Thank you. Your Honor, there were no factual findings that went to the remedy in this case. While there were factual findings that the special master had found that there were, there was inadequate treatment at times, that there was also marginally adequate, like, there's various findings by the special master. But what I'm saying is in the court's order, there are no specific findings that go to the actual remedy that the court imposed. Well, okay. If we determine that the district court may rely on its prior orders and the special master's report, have you shown that they do not support the August 2023 order? The record reflects you offered defendant's expert declaration, but did you challenge any of the specifics in the special master's report? Well, again, so the special master's report, it talked about inadequacy in different forms. So the hours requirement is just but one metric in which the special master was looking at this. So in looking at whether or not the care, and this is what we're talking about here, we're talking about the treatment that is to be provided to these inpatient programs, we're trying to figure out how to best provide that treatment and how to best analyze whether or not that treatment is being provided. Well, and while you might be entitled to some deferential treatment at some point, because running a prison is different than running like a state hospital for, you know, a hospital or something, but your expert asserts that inpatient care should be based on personalized assessments and individualized treatment plans. Does this mean that courts cannot or should not set a minimum level of health care for inmates in, I guess what they call them, the PIPs or the PIPs? The PIPs. Well, not to say that the court has no authority to do, to set minimum requirements, but what we're talking about here and what the court did was set a 20-hour minimum treatment requirement. And that is not, and there were no findings by the court to justify those 20 hours. The court didn't rely on any of the party's evidence. It didn't cite any of the party's evidence and came up with the 20 hours essentially on its own. And that's not something that the PLRA permits. The court has to do the work. It has to perform the need, narrowness, and truceness inquiry here, and that just wasn't done. But are you saying the court cannot set any minimum requirement? In this case, for the particular inpatient, the standard of care is individualized assessment and treatment plan. So you want total, 100% deference to what you say the inmates need? Well, it's not what I say. It is what the clinicians and the experts and the national standard and the program guide, which is very important here, the program guide, which was developed by the parties, the special master, and approved by the court. The program guide sets no minimum standards for these particular patients. And, in fact, the program guide says, again, for patients at the other level, setting or if they can't handle 10 hours of structured treatment, then they would be referred to the inpatient treatment. So that necessarily goes along with some of these for a while, though. I'm sorry, Your Honor. Did the State go along with this 20 hours for a certain period of time, not contest it? No, Your Honor. The State has never, well, let me put it, CDCR, which is the entity that was required or had the injunction imposed upon it, has never agreed to the 20 hours. Judge Graber, I'm sorry. Yeah, I was looking at ER-10, and the court makes reference there to a program operating under a process that, in relevant part, includes the minimum treatment standard measurement requiring that patients be offered 20 hours of treatment per week and so on. So I don't understand your statement that there's no reference in the record to 20 hours other than that the court somehow made it up. I don't really understand that argument. Well, Your Honor, I did not mean to say that the court completely made it up. But what the court did not do was make any findings that showed that 20 hours was necessary, was the most narrow and least intrusive. Now, the reference to the 20 hours...  Does the court have to use those magic words? I mean, it's talking about the court... All stakeholders agree, and this court has found that the minimum treatment standards are adequate. So why isn't that enough to say that's adequate is not fabulous? That's sort of what is necessary to deal with it. So is something more required that says, I have looked at this, and it's not only adequate, but it's the only thing that's adequate? Well, Your Honor, that finding related to DHS, the Department of State Hospitals, not to CDCR. So that is a very important distinction here. The DSH, the Department of State Hospitals, is a different entity. Right, and the court says there's no reason to conclude that different standards should govern inpatient programs administered by CDCR. And I guess, what is the reason it should be different? That's a point that we have made in our briefing, and we'd like to say now, because that was just a conclusory statement by the court, unsupported by any findings. There is reason to differentiate between Department of State Hospitals, DHS, and CDCR. And that is because they treat different types of patients in different treatment environments. The Department of State Hospitals, they do not take the most acute, ill patients that CDCR has to treat. They also don't take certain... But it seems like you would need more than 20 hours, not less. What you're telling me is that the patients are worse off, and yet they need less time? I mean, that seems to be the argument, and that doesn't... Well, while, Your Honor, that might seem counterintuitive, we are talking about a specific group of patients here who are, again, the most psychotic and need the most individualized care. There's nothing that shows that more hours is going to solve their problems. Instead, it has to be more focused in individualized care. Again, that's what the program guide, which the plaintiffs and the special master and everybody agreed, there's no minimums in the inpatient program for that very reason. And the outpatients who get 10 hours, when they can't handle those 10 hours, they get referred to the inpatient. So both the program guide and the national standards all establish that it's not more hours that these patients necessarily need. It's more focused and individualized care. So what's the status of the relationship between the defendants, which you represent, and the special master? And are the defendants complying with the August 2023 order? The current status of that is that the defendants have put a plan in place. There was a meet and confer process with the plaintiffs. Plaintiffs disagreed about the scope of what the court's August 23 order says and actually moved for clarification in the district court. But as to your relationship, you can present this to the special master, right? Present what, Your Honor? Well, what the proposals that changes. You can talk to the special master about what you're proposing, right? In the, like, from, as a result of the August 2023 order? Well, I don't know. I'm, that's what, are you complying with August 2023? Where we're at right now is, well, we've, like I said, we have put, developed a plan that the plaintiffs have. Is that compliance? And so it's not really, the issue here and why we're here on appeal is because these are 20 hours that are ordered. And so this is, there's no room for negotiation with a special master based upon the court order that offered 20. And I will say that for DSH, which we've also. Okay, so that's in effect. You're saying that's in effect. You can't do that. So you're not complying with August 2023. So what do you want us to do here? Well, this, this, what we'd like here is for a reversal of the order, because again, there were no PLRA findings that established that the 20 hour minimum was the, was necessary. Well, when you say that the district court, I have to, if I want to go back to the hyperbolic, you say the district court didn't consider the PLRA. The district court talked about it. So the district court maybe didn't give it your interpretation of the PLRA, but to say that the district court didn't consider it. Your Honor, I'm sorry if I misspoke and to say that it didn't consider it because they, the. Well, didn't you say something like that? That just like the district court did not follow its mandate. That I agree with. It does lay out the standard. The district court did recognize that it had the obligation and the duty to perform the need and narrowness and truce in a standard. But the order does not reflect that that analysis was done. So you want us to say the district court was wrong. What should the district court have done? The district court should have considered all the evidence before it and presented specific findings about why 20 hours, why 20 hours is the constitutional minimum. Why it's 20 hours that is required and not, you know, for example, the court invited the U.S. Department of Justice to weigh in. And while the U.S. Department of Justice says, I don't really know CDCR's inner, you know, workings here. But what I can say is there's been some cases where we have done consent decrees based on patient assessment. We've also done 10 hours. So we don't even have any discussion or consideration of anything less than 20 hours. But why can't the district court rely on the record that was before it? You have an extensive record of going through so many years and so much extensive litigation. There's nothing in the Ninth Circuit law that requires the district court to make extensive findings in this instance, right? Well, this is a specific 20 hours, right? So if this was just something like, you know, the something broader, but here to remedy what is not just the, these are findings from the special master that says inadequate. But again, that's just the hours is just a piece of it. There's other issues. There's staffing issues. There's other issues that are presented here. So why couldn't the district court rely on the special master's extensive findings? I understand that your experts may disagree with that, but how is that abuse of discretion? Because the special master has never made any findings that 20 hours, a 20 hour minimum is the constitutional floor for treatment. And as a matter of fact, the special master is the one who recommended that these plans get put in place. And the recommendation says nothing about you have to set a certain number of hours. It just said you have to establish minimum treatment standards. And I think that reflects the fact that there are many issues, not just the amount of hours, but there's other aspects that need to be addressed that just simply is not addressed by slapping a 20 hour minimum requirement. And so the special master never made findings that 20 hours is required. And so the court, there's nothing for the court to rely on in the special master's findings that would justify its 20 hour minimum requirement. And that is, again, we have the program guide, which is the remedial document in this case. And that document does not require any set number of hours for the inpatient programs. And again, I know we keep going back to this, but it does reflect that patients who cannot tolerate 10 hours of structured treatment get referred to the PIPSC. And that's, again, based upon the understanding that that treatment has to be individualized. It has to be based on individual assessments. And there's no way just slapping a minimum hour requirement is necessarily going to improve care. Can we touch on your security concerns? If the district court previously allowed treatment while patients were secured in cages, why wouldn't that accommodate any security concerns you have? Well, what we talked about with security concerns, that's in the comparison to the DSH hospitals, where they don't have the same security concerns. But they also have levels of security, don't they? Those hospitals? Because they're often treating incarcerated inmates, are they not? They are. But at the most here, we have the intermediate level, which allows all of the patients, even the incarcerated patients, to live in an open dorm, kind of open mall setting. And that is just simply not the case with CDCR. And really, the important part about that is, DSH, who, again, they were not court-ordered to provide these 20 hours. They voluntarily provided them, or offered to have them provided. Because of their unique set of patients and their treatment environment, they were able to at least aspire to this 20-hour goal. But the difference here is that CDCR just does not have that same flexibility in terms of having patients that can interact on a regular basis with other inmates or patients, or the ability to sort of travel around and go from a different treatment environment to a classroom environment. Wasn't the DSH also ordered to develop the same standards? They were ordered to come up with a CEQA process, so it's a quality improvement process. Now, that was not nearly the same as what happened here. That was come up with a process, and so DSH did that. And as a part of that, DSH decided, given its patient population and its treatment environment. What's the specific security concern with the 20 hours? The specific concern, it's not that necessarily that there's a security concern with the 20 hours. It's that these patients who have the most severe mental illness, and who sometimes do have the most safety and security risks, they simply don't utilize, or it's not clinically indicated for them to have the 20 hours. And so, these patients are just, they're a completely different set of, well, not a completely different set, but there is a very big difference between the DSH patients and the CEQA. Well, is it possible that you can lose here because you haven't shown an abuse of discretion, and that you didn't really adequately, I mean, you want the district court to believe you're an expert, and that you didn't accurately talk the district court out of the, by your detail of what the special master report said. Is it possible, I mean, you could mount a challenge in the future, but that you didn't make it here? I don't believe that's correct, Your Honor, because again, I do think that we show that there's abuse of discretion. Well, I know, but let's say we don't. Are you forever, it's that you didn't make it here, isn't it possible you could still attack the special master's findings, and possibly at some point erode on them? Well, again, the special master's findings was just this sort of piece of the puzzle. What we have to be concerned about here is the district court's order, which requires the 20 hours. And that was, again, the hours requirement came up, and that was based upon the district If we found that you didn't carry your burden here, and you didn't show an abuse of discretion, I don't think that precludes in the future that you might be able to challenge it. But I've taken you over time. Let me find out if my colleagues have any questions. No, thank you. They don't. Thank you. So you really actually have no rebuttal time, but I'll give you two minutes. I appreciate that, Your Honor. Thank you. Good morning again, I think.  Still good morning. Yes, it's still morning. Good morning again. I am Lisa Ells. I represent the plaintiff class, who are appellees. In the face of uncontested findings that treatment levels in the PIPs are woefully inadequate, the district court here tried repeatedly to defer to the state to fix the problems without further intervention. But deference failed. After a decade of findings of deep, entrenched problems in the PIPs, the special master finally in 2021 recommended that the state be required to develop minimum treatment standards. Not only did the state not say those standards were unnecessary, they agreed to implement them voluntarily. But then they never did. And even then, and even as the special master specifically linked the ongoing violations in the PIPs to the lack of minimum treatment standards, the district court again deferred in 2022. Finally, after deference failed, the district court, consistent with the mandate in PLATA in the Supreme Court, finally acted to effectuate the rights of the plaintiff class and required development of a minimum treatment standard. But the state submitted a manifestly noncompliant proposal that contained no minimum whatsoever for structured therapeutic treatment, much less a plan for implementing and measuring compliance. The district court, who knows this record better than any of us ever will, did not abuse its discretion in rejecting that plan, finding that it would have only maintained the unacceptable status quo of unconstitutional conditions in the PIPs, where, as the special master has found in report after report, treatment is driven by resource limitations, not by individual patient need, and individual treatment planning and delivery does not exist. Instead, the district court reasonably looked to the audit standards that the other defendant in this case, Department of State Hospitals, developed for the specific purpose of implementing a durable, constitutionally adequate program in its State hospitals for the exact same levels of care and the exact same patients as the ones we're talking about today. The district court correctly found there was no meaningful difference between DSH and CDCR for the purposes of the minimums that DSH selected and the State has identified none today. DSH standards mandate that every patient be offered 20 hours of weekly therapeutic structured treatment unless their clinicians say they need less. But how is a 20-hour requirement individualized care? So the program guide, well, two things. So first of all, it does require a minimum. So it requires more than the operative remedial plan, which is the program guide. The program guide provided for no minimum treatment levels, and over the course of 20 years, we have discovered the program guide has failed to remediate the violations in this case. And that's why the district court and the special master recommended the development of minimum treatment standards, because the lack of any standards in the program guide for this structured therapeutic treatment has failed to remediate the violations under the Armstrong 2014. But that's still not an answer to the question. How is that individualized? A required 20 hours? So first of all, it's required to be offered. Patients can always refuse treatment. Second of all, the clinicians that work in these places, if they find that a patient, for example, is too ill to engage in 20 hours of treatment, they're allowed to offer less. They just have to document why that is, why it's clinically appropriate to do that. And then they have to work with a patient to engage in more therapy. That is the purpose of an inpatient program. Third, there is individualized treatment planning within the 20 hours. So the program guide requires, and we all agree it's appropriate, that care should be individualized. That means that, for instance, within these 20 hours, the state is provided the opportunity to engage or to provide and offer only individual therapy sessions, only group therapy sessions within the 10 hours, of course. And also, they're allowed to design whatever sort of treatment modalities they want to use if they want, if it's appropriate for this individual patient to provide. For instance, anger management, clinicians are provided the opportunity to provide that. But the problem in the PIPs today is that it's a fiction. Individualized treatment planning of the type that— But if we affirm the district court, are we saying there's a constitutional right to 20 hours? No, Your Honor. Within—this Court has made very clear, and the Supreme Court in Plata has made clear, that the remedy evolves within the context of the case. So in this particular case, with the decades of noncompliance, with managing this extremely complicated remedial plan, the Court has looked at the other program that treats the exact same patients at the exact same levels of care, which it chose to provide 20 hours of structured therapeutic treatment a week, downward departures allowed where appropriate for clinical reasons. And it said there is no difference. And moreover, the— Can I ask a variant, I think, of the question that Judge Callahan just asked? Because the other program was developed voluntarily, 20 hours may be more than the constitutional minimum. And I guess that's the one question I have. 20 hours is adequate, but what if 15 were the smallest number that would render the care adequate? And, you know, maybe this doesn't seem like a big thing, these numbers of hours, but it does seem rather arbitrary to say that one of the defendants came up with this on their own, and therefore it's the constitutional minimum. So a few things, Your Honor. First of all, this — the Supreme Court in Plata and Graves, Melendrez, and other Armstrong cases in this Court make very clear that the — the district court did not need to specify that there's an exact match between the constitutional floor and the remedy imposed. The — what is required, according to the Plata Supreme Court decision, is to ensure a fit between the remedy's ends and the means chosen. In Graves, this Court described that requirement as just being satisfied that the distance between the constitutional violation and the remedy is not so far apart as to be illogical or without support in the record. There is clearly support in the record. In addition to the DSH audit requirements, plaintiff's evidence, including expert evidence, fully substantiated that 20 hours is appropriate. That is what we asked for, and that is what the Court ordered. Do you think that's the constitutional minimum in this case? I think — so, again, the remedy evolves within the context of the case. The Court has ruled that a less intrusive remedy that provides for no minimums is — is not appropriate and will not remediate the violations. It then found that this is an appropriate proxy because 20 hours — So that's a yes? Is that a yes? It is — within the context of this case, it is appropriate to remediate the constitutional violations. But that's very — you know, you're very careful in your answer because there is no way to tell if 15 would have been enough. I guess that's — it just seems incredibly arbitrary to me to say that, you know, 20 is what you wanted, 20 is what the other defendant voluntarily chose. But the Court's job, I think, is to figure out what is the minimum that would remedy in this situation. I mean, you know, 50 hours might have been better, but that's a lot. So we're dealing with — and I know that between 15 and 20 seems small, but it represents a huge amount of resource differential. And so my concern is how we figure out or how the district court figured out that that is what is necessary — not merely appropriate, but necessary — to remedy the violation. And that — I understand that the Court clearly said having no minimum is a no-go. I'm fine with that. That was pretty clear. But picking this number seems, to me, rather out of thin air. Your Honor, I would direct you to a couple of things. The first is the specific context in which the Department of State hospitals elected 20 hours as the appropriate remedial minimum for those programs. In 2017, the Court ordered DSH to develop a CQIT program in order to impose standards and figure out if they were being met that would effectuate the constitutional remedy. So it was chosen in a very specific context, and it was chosen for the purpose of remediating the violations. Well, I guess what my concern — a little bit like what Judge Graber says. Okay, but we're looking at this for abuse of discretion. So I'm trying to look at it from the standpoint — and I think I said to the State that when they said the judge didn't consider the PRLA, I don't — I think the record belies that. But abuse of discretion is fairly — it would have been — the defendants would have to show that the judge abused the discretion. There was evidence in the record about the 20 hours and all of that. But I guess my concern, like what Judge Graber said, if they had done better on the record here, is there a way to assail that 20 hours in the future? I have concerns about if maybe there was no abuse of discretion on this record, but maybe there could be on a better record by the defendants. Is that — is that — can never happen? So two things. For the record that was developed here — well, I'll get to your second question first because it's very simple. Yes, a Rule 60 motion, just like in the last appeal, would be appropriate here if the State can establish that some changed circumstances warrant reducing the number of hours. But to your first point, which is a continuation of the question that Judge Graber had, the — the Supreme Court and this — this Court in the Armstrong 2014 case very clearly said that if the State has a different proposal, it has to establish that it would be equally effective at remediating the violations. The State did not propose 15 hours. The State provided no minimum whatsoever. So that's what we're talking about here — plaintiff's evidence and the DSH standards requiring flexible minimums of 20 hours, unless not clinically appropriate, and, on the other hand, no minimum whatsoever, which would just maintain the unconstitutional status quo. So you know, for the same reason that the Plata court in — in — in the Supreme Court — so the court there was looking at, you know, a minimum percentage of crowding reduction. The State refused to put forth any number whatsoever and just said no reduction is appropriate, and we put forth evidence saying 145 percent was appropriate. And the court essentially looked at their evidence and said, you've given me nothing to work with. I can't defer to that. And similarly here, the State is not asking for a different, lower-set minimum. It is asking for no minimum. And the court did not abuse its discretion based on this record and its leadership of this case, this extremely complicated case, for the last 20 years. Again, the court notes this record better than any of us ever will. It has lived with this case and managed this extremely complicated remediation for 20 years. And there is no abuse of discretion. The court — or, I mean, excuse me. The State points to none. I'd like to address the point that DSH is somehow different. It's simply not. The court made a factual finding that this Court reviews for clear error that there's no meaningful distinction between DSH and CDCR for the purposes of this 20-hour minimum. So to be clear, there's no evidence showing that there's any difference between these patients. The levels of care provided in the hospital at DSH are the same levels of care that are provided in the PIPSC. And the DSH hospitals do take acutely ill and even violent patients. They take people who are by definition violent and treat them, including sexually violent predators. And they also treat MDOs, mentally disordered offenders, who are by definition violent. That is how they are committed, on the basis of their violence. So to say that there's no way to treat these patients within CDCR is just illogical, and it's not supported by the record. And more importantly, this Court has accepted that even where — But this 20 hours doesn't mean they have to see a psychiatrist for 20 hours. No. No. Okay, because that — There's no — That just seems impossible. Your Honor, there were separate minimums proposed for psychiatric contract frequencies in the PIPSC as part of the other parts of their plan, and we didn't object to those. So, no, it's nowhere near 20 hours. But don't you think it's a little bit conclusory? The district court just said there's no reason to conclude different standards should govern the inpatient programs administered by CDCR, and that's about the extent. Shouldn't it look a little bit more deeply into whether there would be any differences between DSH and CDCR that would have required perhaps a different standard? Well, again, Your Honor, the Court knows the record very, very well in the special master's findings. But more importantly, the State hasn't ever identified in the district court or this court any meaningful difference. What they've said is that these are different patients, that they're more violent, that they're more complicated, and none of that is true, and none of it is borne out by the record. The State needs to show clear error with that statement, and they haven't, they have no evidence, and they don't even have any argument about why that is actually a clearly erroneous statement. And moreover, manifestly, it is true. And the other thing I would say is that even in CDCR's outpatient... Let's say we agree that on this record the State did not meet its burden to show that. I guess, on a better record, I mean, can they make a better record and show that, or are we giving you on a silver platter, if you don't get 20 hours, it's a constitutional violation? Well, Your Honor, I mean, they had the opportunity to present evidence and even to articulate something here. So are you saying they can never tack that again? No, they're allowed to bring a motion to modify if there is a basis. But for now, we are giving you on a silver platter 20 hours is a constitutional violation. You are affirming a very careful district court decision that is owed deference from this court for its oversight of this extremely complicated remedial plan. And in the context of that plan, it found that 20 hours is the appropriate minimum requirement for treatment in the PIPs, which are undisputably unconstitutional right now. And in that context, 20 hours is the constitutional minimum. And that was what was required to be mapping to the constitutional violation in this context under... So how close was the State to complying with the 2023 order? Did they do anything? Well, this is... The 2023 order is the first time that requirement was established. And you know, the State represented that they've rolled out a policy. In fact, they have not. There is no policy in place right now. That's a separate issue. But there is no policy in place that complies with the obligations of this order. And there is a pending motion to clarify the scope of that order in the district court. That doesn't affect anything that we're talking about here. But it is a misstatement by the State that they have imposed that or that they have implemented this requirement. The only other thing that I would like to point out here is a couple of very important findings that provide the basis for this Court's or I'm sorry, for the district court's findings. The first is that the Court had already found that 10 hours would not be adequate treatment in the inpatient programs. The State has never contested that. So that's a baseline threshold. And the Special Master made a specific factual finding that the State did not object to, that the lack of minimum treatment standards in the PIPs was precipitating the ongoing violations. And that's at ER 478. And that was just months before this order issued. And again, the State didn't object to that finding or say that it was wrong. And finally, I just would like to point out that the State — I'm sorry, the district court made a number of factual findings that the lack of — that the State's plan, which lacked any specific objective or verifiable standards, would not provide any basis to provide the care that the program guide requires, which requires offering inpatient program patients varied treatment to assess their needs. It needs to be intensive. And with the lack of any minimum standards, that could never happen. There's no clear error with that holding. Similarly, as we all know, standards drive resources. The PIPs are currently drastically understaffed. They are under-resourced. And care cannot be provided because there is nothing to guide the planning or the resources that are directed in the PIPs. A minimum provides a target for that that approaches constitutional compliance and would remediate the violations. Those are clear error review. The State here points out no error with any of that. So in this context, where we have a complex remedy that the district court has been overseeing for, you know, decades at this point, and in the face of these uncontested violations that minimum standards are necessary, which the State has conceded, there's no abuse of discretion in setting 20 hours as the minimum threshold when the other State hospital employs the exact same standard for the exact same patients at the exact same levels of  Thank you. Thank you. All right. You have two minutes. The State's plan did not have minimum standards because that is what the program guide that was developed by the parties and the special master established was the standard for inpatient care, where there were hour requirements that was stated elsewhere, but it's not in the program guide. So did you give the district court the choice of zero hours and 20? So it is not a matter of zero hours because that sort of misconstrues what's happening here. It is individualized treatment, which the record shows these patients are not receiving zero hours of treatment. They are receiving care, but as individualized, which is exactly how care needs to be provided for these patients. But you've been repeatedly told that what you're doing is not enough. And then what you're what you're saying, your individualized plan as it presently is being implemented is enough. What we've been told is not that your hours are not enough. And it is incorrect that there was any findings that there was a minimum number of 10 hours that needed to be provided for inpatient care. That does not exist. If that happened, that would have been in the special master's recommendation. That would have been in the court's order. That does not exist. And so if the court wanted to change the individualized treatment plan that was in the program guide, then it was incumbent upon the court to do that. It had to make specific PLRA findings, which it did not do here. And the and that you were talking about abuse of discretion, not following the PLRA, not making those specific findings is an abuse of the PLRA. What would the answer be? Could the court have gotten to 20 hours? That I don't know because the court did not do its job. It did not make any findings about that minimum was even necessary, let alone the 20 hours. As Judge Graber said, 20 hours, it could be something else. It could be 15. But it is not the state's burden to to to establish a better record. It was the court's obligation to establish that it had specific findings that 20 hours was the constitutional minimum of care. The court did not do that here. It needs to be remanded and reversed to go back for the court to actually justify the 20 hours if it is going to deviate from the program guide, which has been in place by the parties and the special master for years. OK, thank you for both of your arguments. And this matter will be submitted and the court is in recess till tomorrow at 9 a.m. All rise.
judges: GRABER, CALLAHAN, KOH